### Andrew Brown et al. v. John Oakes.

Delivered April 8, 1897.

1. **Colored School Trustees—Term of Office—Statutes Construed.**

One of three colored trustees of a school district elected in 1895 who draws No. 2 is entitled to office for two years, under Acts of 23d Legislature, p. 196, secs. 50 and 58. as amended by Acts of 24th Legislature, p. 29.

2. **Same—Same—Effect of Action of Superintendent of Public Instruction.**

That the Superintendent of Public Instruction fixes at one year the term of a school trustee, which term is fixed by law at two years, does not affect the trustee's right to hold office for the two years.

3. **Same—Same—Effect of Commission and Candidacy for Re-election.**

The right of a school trustee whose term is by law fixed at two years to hold office for that time is not affected by the fact that the commission issued to him was for only one year, and that he became a candidate for re-election at the close of the year.

Appeal from Fayette. Tried below before Hon. H. Teichmuller.

*Moore & Duncan,* for appellants.

No brief for appellee reached the Reporter.

WILLIAMS, Associate Justice.—At an election for trustees held on the first Saturday in June, 1895, in school district No. 1, at La Grange, Fayette County, appellee and two others were elected, in accordance with section 58 of the Act of 1895, as the trustees for the colored schools. After such election, the trustees organized and drew lots for their terms, as provided by section 50 of the Act of 1893, and appellee drew No. 2, by which he claims to have become entitled to hold such office for two years from the date of his election.

The superintendent of the county, in 1896, ordered an election of two trustees to succeed appellee and his colleague, who had drawn No. 3, upon the assumption that they held for one year only. At the election the two incumbents were candidates for re-election, but were defeated, and appellants Brown and Sutton were elected in their stead. This suit was then instituted by appellee to restrain, by injunction, the county superintend-

ent and the other appellants from ousting him from office, or otherwise interfering with his possession of it, and his performance of its functions.

A preliminary injunction was granted, and on final hearing judgment was entered in plaintiff's favor, perpetuating the injunction, and declaring him entitled to hold the position as claimed. From this the defendants have appealed. The brief of appellants raises no question except as to the time for which appellee, under his election, was entitled to hold his office.

At the trial, the county superintendent testified, without objection, that before the election in 1895 the State Superintendent of Public Instruction had issued a circular, by which he instructed that, in the election of colored trustees under the Act of 1895, in order that their terms might coincide with those of white trustees, one should be elected for two years, and two should be elected for one year each; that the trustees were accordingly elected, and drew lots for their terms, and informed him that plaintiff and one of the others had gotten the one year terms, and the third had gotten the two years term; and that he entered their names upon the books, and issued to them their commissions, and they took oaths accordingly. He further stated that he heard nothing of plaintiff's claim that he was entitled to hold for two years until after his defeat at the last election. These statements are uncontradicted, except as presently mentioned, and we find them to be true. In fact, the trustees merely drew for their terms, as provided by the statute referred to, the plaintiff drawing No. 2, and the other trustees Nos. 1 and 3, respectively, and so reported to the superintendent.

By section 50 of the Act of 1893, it is provided as follows: "On the first Saturday in June, after the passage of this act, the qualified voters of each school district, at a school district meeting for that purpose, shall elect three trustees for said district, who shall enter upon the discharge of their duties on the first day of July next following. They shall immediately thereafter organize, by electing one of their number president, and one secretary of the board of trustees. The terms of office of said trustees shall be divided into two classes, and they shall draw for the different classes; the one drawing number one shall serve for one year, and those drawing numbers two and three shall serve for two years, and until their successors shall have been elected or appointed and shall have qualified. On the first Saturday in June of each year thereafter, there shall be an election in each school district for the election of a trustee or trustees, as the case may be, and the trustee or trustees so elected shall serve for two years, and until their successor or successors shall have been elected or appointed and shall have been qualified. The trustees so elected or appointed shall, before entering upon the discharge of their duties, qualify by taking the oath to faithfully perform their duties, and shall immediately file said oath with the county superintendent or county judge." Laws 23d Leg., p. 196.

The first part of section 58 of the same act was as follows: "White and colored children shall not be taught in the same schools, but impartial

provision shall be made for both races.   Three white trustees shall in all cases be elected, or appointed, for the management and control of the schools of the district; and three colored trustees shall be elected or appointed, in any school district, for the colored schools therein, upon the written application of ten colored residents of said district, having one or more children within the scholastic age, to the county superintendent one month before any annual election in said district for school trustees, which colored trustees shall manage the colored schools, under the direction of the trustees of the district.   *   *   *"

This section was amended in 1895 so that the parts thereof pertinent to this inquiry are as follows: "White and colored children shall not be taught in the same schools, but impartial provision shall be made for both races.   Three white trustees shall in all cases be elected for the control and management of the white schools of the district, and three colored trustees shall be elected for the control and management of the schools for colored children.   The election for white and colored trustees shall be held at the same times and places, and the ballots cast for white trustees shall be deposited in a separate box than that used for the ballots cast for colored trustees.   The returns of the election shall be made to the county judge, who shall deliver the same to the Commissioners' Court to be canvassed and the result declared as in cases of other county elections.   The returns shall show distinctly the separate votes for white and colored trustees, and the county clerk shall certify to the county superintendent the white and colored trustees elected for each district, and the county superintendent shall issue the commissions of trustees."   Laws 24th Leg., p. 29.

Under the Act of 1893, the schools, both white and colored, were to be under the management of the same trustees, unless the colored schools were placed under separate management in the manner prescribed.   If there was only one set of trustees, the members were required to be classified at the time specified in the statute into Nos. 1, 2, and 3, the first of whom should hold his first term for one year and his subsequent terms for two years, and the second and third should hold their first and all subsequent terms for two years; the object being to make their terms expire and their elections happen in different years.   If, in any district, there were two sets of trustees chosen, it is obvious that the combined effect of sections 50 and 58 was to require the same procedure in each set, in order to classify the terms of office in both the same way.   In either case, by the classification made in 1893, the term of office of the trustee who then drew No. 1 would have expired in 1894, and the term of his successor, then elected, being for two years, would not have expired until 1896, while the terms of those who drew Nos. 2 and 3, being originally for two years, would have expired in 1895, and the terms of their successors, then elected, in 1897.   Thus, under this order, had the law not been changed, there would have been either two or four trustees to be elected in 1895 for two years.

There seems to have been but one set of trustees in this district prior

to the amendment of the law in 1895. That amendment required the election of three white and three colored trustees in each district, and made no express provision for the fixing of their terms. But section 50 was left undisturbed, and the course provided by it was evidently intended to be pursued. Under it, it might be urged that the classification by which the order of the terms had been fixed in 1893 should control, and that when the new trustees were elected it was only necessary for them to draw for the purpose of ascertaining who should hold term No. 1 and who should hold terms Nos. 2 and 3; and that when this had been done, their terms would begin and end according to the order previously established. By this view, the trustee drawing No. 1 would have been successor of him whose term in 1895 had still one year to run, and those drawing Nos. 2 and 3 would have taken the place of the two whose terms were then to begin, and consequently would have held for two years.

The other theory would be that the terms of three colored trustees were to be classified in accordance with section 50, regardless of what had been done before, the person drawing No. 1 taking a one year's term, and those drawing 2 and 3 taking two years' terms. Thus, it so happens that the same result would be reached, whichever view is adopted, and it is unnecessary to determine which theory is correct.

We do not think that the fact that the Superintendent of Public Instruction fixed the terms for which the trustees were to be elected can affect the question. The subject was regulated by the law, which could not be thus altered. We think it proper to say that the instructions referred to are not furnished us, and we get their purport only, very generally stated, from parol evidence in the record.

For the same reason, the facts that the commission was issued to appellee for only one year, and that he became a candidate for re-election at its expiration, can not control the decision. His title to the position was derived from his election, and not from his commission, and his term of office results from the effect given by the law to the drawing.

*Affirmed.*